# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

FILED
DEC 15 2006
CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

Civil Action No. 06-46J

James Franklin Rodgers
v.s
Gerald Rozun
v.s
The District Attorney Of Blair County
Richard A. Consiglio

Judge Kim R. Gibson

Magistrate Judge
Lisa Pupo Lenihan

## Petitioners Response To The Respondants Response Of The Petitioners Writ Of Habeas Corpus Petition Pursuant To 28 U.S.C § 2254

RECEIVED
DEC 15 2006
UNITED STATES MAGISTRATE JUDGE

James F. Rodgers Bm 3819
SCI Somerset
1600 Walters Mill Rd
Somerset Pa, 15510

Dated Dec. 6, 2006

And Now, comes the petitioner, James F. Rodgers, by and through himself pro se respectfully submitting this response to the respondents response to the petitioners Writ of Habeas Corpus petition.

The respondent was ordered to file an answer to the instant petition on Nov. 6, 2006. The respondent was ordered to answer each of the petitioners claims in a comprehensive manner by Nov. 30, 2006 However the response was non-responsive, as the respondent responded to petitioners original unamended P.C.R.A petition. The respondent merely refers to the opinion of the P.C.R.A court, and does not address the petitioners claims set forth in his writ of Habeas Corpus and Memorandum as ordered to by this Hon. Court.

-1-

Furthermore, the respondent failed to answer or even attempt to answer the prosecutorial misconduct claims asserted in the petitioners Writ of Habeas Corpus petition.

Therefore, the petitioner contends that the respondent failed to adequately answer this petition in a comprehensive manner, and didn't answer the petition as ordered. All of the following will show how the petitioners issues were not addressed by the Respondent

1.) The petitioner asserted in his writ of Habeas Corpus (pgs 4-5 (a)(b)) and his Memorandum (pgs 1-8 (a)(b)(c)) that Trial and appellant counsel Randy Miller was ineffective in that he was not of a sound state of mind to adequately prepare petitioners case for trial, and soundly defend the petitioner and his constitutional rights to a fair and impartial trial.

The respondents response to this was as follows: "said claim is denied for the reasons set forth in pg 4-5 of opinion and order of Judge Hiram A. Carpenter III dated June 27, 1997." That being (pg 4 lines 9-11) Attorney Millers personal problems, alcohol issues or other personal difficulties have no bearing on the effectiveness of his representation standing alone... (pg 4 lines 21-23) For this reason we do not recognize Attorney Millers state of mind during the trial as a cognizeable issue... (pg 5 lines 4-7) The only question is the manner, expertise and strategy which he brought to the trial, and whether petitioner was so prejudiced by counsels actions that a reliable determination of guilt was made... (pg 5 lines 9-10) Again, attorney Millers state of mind is not the issue.

The petitioner believes that Mr. Millers state of mind played a key role in his ability to represent the petitioner. Judge Carpenter as he stated did not even recognize this as a cognizeable issue, therefore didn't even consider Mr. Millers state of mind when making a determination of the ineffective assistance of counsel issues set forth by the petitioner.

"In Griffin Vs Winans, 684 F.2d 686 (1982) the court found that the District Courts factual findings supporting its conclusion that petitioner received ineffectiveness of counsel at his state court trial were not clearly erroneous, the district court supports its conclusion with specific findings as to counsels inadequate pre-trial preparation, ineffective conduct of the defense and intoxication while preparing for trial and during trial."

This issue is not standing alone as Judge Carpenter would have one believe, the problem is that he failed to recognize it as a issue, and therefore did not even consider it.

As in Griffin Vs. Winans, if this Hon. Court would take the issues presented in the petitioners Writ of Habeas Corpus and Memorandum cumulatively, the inadequate pre-trial preparation and ineffective conduct of and by trial counsel would be seen, and the petitioner believes these things came about because of counsels intoxication and conflict of interest problems which affected counsels state of mind.

2.) The petitioner asserted in his writ of Habeas Corpus (pg 5-7 (a-d)) and in his Memorandum (pg 8-17 a-d) that trial counsel was

-2-

ineffective for failing to thoroughly investigate leads and facts that would have discredited the prosecutions case and theory, thus casting a major shadow of doubt upon the prosecutions case.

The respondents response to this was as follows: "The same is denied for the reasons set fort on pg 27 of the aforesaid attached opinion and order (exhibit 1) the same being without any specificity which would allow further answer, and the same being based on nothing more than inuendo

This response is non-responsive, in that Judge Carpenters opinion was addressing petitioners unamended P.C.R.A petition. This Hon. court ordered that the respondent to respond to petitioners writ of Habeas Corpus and or memorandum, not the unamended original P.C.R.A petition, this Hon. courts order was very specific.

As the petitioner believes his Writ of Habeas Corpus and memorandum was specific and included supporting facts and exhibits that made the petitioners issues more than inuendo but real issues of ineffectiveness of counsel.

3) The petitioner accerted in his Writ of Habeas Corpus (pg 7) and memorandum (pgs 17-19) that trial counsel was ineffective for stipulating to the chain of custody reports prepared by the prosecution and police during petitioners trial and failing to fully review them.

The respondents response to this was as follows: "The same is denied for reasons set forth on pages 11-17 of the aforesaid attached opinion" Judge Carpenter stated in that opinion pg 16 lines 7-9 "How can we say at this point that a stipulation to the accuracy of the police log in anyway weakened the defense."

Because of the many facts known to counsel and set forth in the petitioners Writ of Habeas Corpus and memorandum there can be no sound reason why counsel stipulated to these reports and failed to thoroughly review them. Counsel should have made the prosecution account for every drop of the petitioners blood and movement of his blood and evidence through these reports. And because as counsel stated "he barely glanced at these reports" it was not discovered untill after the petitioners trial that a purple top tube of his blood was missing.

4) The petitioner accerted in his Writ of Habeas Corpus (pgs 7-8 a-b) and in his memorandum (pgs 14-23 a-c) that trial counsel was ineffective for failing to object to prejudicial, unsupported and false remarks made by the prosecution in his closing arguement to the jury.

The respondents response to this was as follows: "The same is denied for reasons set forth on pg 28 of the aforesaid attatched opinion and order. Further the same is without specificity which would allow further answer. Judge Carpenter in his opinion pg 28 lines 13-14 stated "This issue was ruled on by the court and is waived or litigated at this point".

How can the respondent accert that this issue is waived or litigated, when even at the time Judge Carpenter

-3-

asserted it was waived or litigated that was the first time the issue was addressed by the petitioner, and further this is the petitioners first writ of Habeas Corpus, and it can't be said that this issue is without specificity to allow further answer because the petitioners writ of Habeas Corpus and memorandum was very specific.

5) The petitioner asserted in his writ of Habeas Corpus (pg 8) and his memorandum (pgs 23-24) that trial counsel was ineffective for failing to object to the prosecution misstating the facts and misleading the court to have commonwealth exhibit # 28 a brown handled lockblade knife introduced into evidence.

The respondents response to this was as follows: "The same is denied on the basis that the same was previously litigated and without specificity which would allow further answer."

Again how can it be asserted that this issue was previously litigated when this is the first writ of Habeas Corpus filed by the petitioner, and the petitioners writ of Habeas Corpus and memorandum was very specific in addressing this issue.

6) The petitioner asserted in his writ of Habeas Corpus (pg 8-9) and his memorandum (pg 24-25) that trial counsel was ineffective for failing to object to prejudicial hearsay testimony presented by the prosecution.

The respondents response to this was as follows: "The same is denied for reasons set forth in pages 21-27 of trial courts aforesaid attached opinion and order. The court stated on pg 21 lines 14-25 " Yet again we see defense counsel using this very hearsay which he permitted in the record as part of his closing arguement, infact he acknowledges it was hearsay as follows: What else did David Houtz do for Tommy Bowling? He testified at this trial about a phone call Frankie supposedly made to Melissa on the night of the murder late. Well somebody wore the white jacket out of Melissa's apartment to the scene of the murder. And if it was Melissa, why call her on the phone because she is right down stairs (closing arguement vol.16 pg 41) This arguement is again part of the theory that this defendant was framed it represents one more example... pg 22 lines 1-5 of the conspirators at work to cover each others tracks. The fact that it was hearsay testimony and could have been objected to does not in itself any prejudice."

Not only was this testimony by David Houtz hearsay as the court agreed, but it was in fact very prejudicial and false. The prosecution contends that the petitioner stabbed Mr. Lascoli, then went to prospect park and discarded the cloths he had on, thus being in need of clean cloths.

The testimony in question by David Houtz was he stated some time after Mr. Lascoli was killed Melissa O'Shea called the house for the petitioner, Mr. Houtz said that he spoke to her and she told him that the petitioner called her on the night of the murder and told her that he needed clean clothes.

This false, prejudicial hearsay testimony mislead the jury into believing that on the night Mr. Lascoli was killed the petitioner was in need of clean clothes, and coming from the petitioners brother made it even more believable.

-4-

Why would the petitioners brother lie, was no doubt in the minds of the jury, and thats why the prosecution used him even though they knew he was lying. The same day David gave his statement to police, later that same day Melissa gave a statement to police and she was not questioned about it, nor did the prosecution or counsel question her about it at trial and she was a prosecution witness

After petitioners trial for the first time Melissa was asked about this phone conversation and she said it was a lie, and Mr. Houtz signed a affidavit stating that he lied about many things at the petitioners trial this being one of them.

The white jacket Mr. Miller spoke about had nothing to do with this issue, or shown to be linked to this murder in anyway. One prosecution witness said petitioner had it on when he came back to her house on the night of the murder, another prosecution witness testified it was at her house prior to the murder up untill the day after the murder when Tommy Bowling wore it from her home and it was found in Tommy Bowling mothers house in his bedroom.

This hearsay testimony was prejudicial in that it was false and misleading and counsel should have objected to it.

7) The petitioner accented in his writ of Habeas Corpus (pg 9-12 a-g) and in his memorandum (pg 25-34 a-f) That trial counsel was ineffective for failing to object to known false and perjured testimony by the prosecution and failing to properly cross-examine and impeach these witnesses

The respondants response to this was as follows: "The same is denied, in that it is no issue at all. Further, the same is without specificity that would allow further answer and is based on nothing other than innuendo.

This answer is non-responsive in that the petitioners writ of Habeas Corpus and memorandum set forth specific facts and exhibits that would not only allow the respondent to respond but makes this claim more than innuendo, but a real issue.

8) The petitioner accented in his writ of Habeas Corpus (pg 13-14) and in his memorandum (pg 34-37) That trial counsel was ineffective for failing to call DNA experts to petitioners Frye Hearing.

The respondants response to this was as follows: "The same is denied for the reasons set forth on pages 5-11 of the aforesaid attatched opinion and order as well as pg 8-17 of the Pennsylvania Superior Court opinion 2-6-92

The Superior Court opinion is not relevant to this matter because it is not addressing this issue, rather a issue that counsel raised on his direct appeal

In Judge Carpenters opinion (pg 8 lines 23-25) he stated "That inquiry is impossible without relitigating the entire DNA issue. As both Judge Van Horn and the Superior Court have already noted (pg 9 line ?) that the field of DNA even at the time

-5-

of this trial, was readily accepted within the scientific community. That was true in 1990, it is even more true today. Judge Van Horn had in his possession, four volumes of material prepared by Dr. Landers. These were the very materials that Dr. Landers had used when he served as the expert witness in the Castro case."

First Dr. Landers didn't prepare the four volumes that the court spoke about. That was four thousand pages of material it would have been more simpler for him to just testify if that were the case. However counsel did get some of the material from Dr. Landers.

Further more to say that DNA testing was readily accepted at the time of the petitioners trial is misleading in that the petitioners trial was in 1990 the DNA was done in 1988.

In 1987 Dr. Landers did in fact serve as a DNA expert in the Castro case, he was called as a expert witness for the defense at the Frye hearing and he pointed out the many misgivings of the DNA testing done by life codes and the DNA was not allowed into that trial.

In 1988 this case came about and life codes also did the DNA tests in this case. The same things that took place in the Castro case took place here, except here counsel who never handled a case involving DNA failed to call DNA experts to the Frye Hearing and the DNA was allowed into trial.

The petitioners case was the first in PA to use DNA in a criminal and nobody knew anything about DNA and the only expert opinion Judge Van Horn had was that of the experts who did the tests in question. President Judge Thomas Peoples granted defenses motion to hire DNA experts for this, yet counsel still failed to get one for this hearing.

Judge Carpenter did not consider if trial counsel was ineffective for failing to call DNA experts to petitioners Frye hearing, because of what he believed the fall out of finding counsel ineffective would bring, and this should not have come into play in his consideration.

9) The petitioner accerted in his writ of Habeas Corpus (p14) and his memorandum (pg 37-38) that trial counsel was ineffective for failing to go over the exhibits that were to go out with the jury, in turn common wealth exhibit 205 unlawfully went out with the jury during deliberations.

The respondents response to this was as follows" said claim is apparently directed at ex 205. The same is denied for the reasons set forth on pages 20-21 of the aforesaid attached opinion and order, as well as the supplemental opinion and order of the Hon. Hiram A. Carpenter dated May 13, 2003, and the opinion of the Pennsylvania Superior Court dated July 13, 2004. The claim is other wise without specificity that would allow for further response.

Judge Carpenter in his supplemental opinion and order of May 13, 2003 stated " After hearing, we are satisfied none of the jurors could state with any degree of certainty that they had been exposed to this exhibit during the guilt phase let alone that they were prejudiced by it if they did see it"

-6-

The Pennsylvania Superior Court in their opinion July 13, 2004 (pg 7-8) stated the jurors consistently testified that they had no real recollection of having been exposed to the exhibit in question. The PCRA assessed the testimony and made credibility determination regarding the the testimony offered by these jurors. The court ruled that appellant failed to establish that the possible presence of the exhibit in the jury room during deliberations on appellants guilt had a prejudicial affect on the out come of the appellants case."

Only eight (8) of petitioners jurors were present at the above mentioned hearing on this matter Mar. 21, 2003, and half of them recalled seeing exhibit 205 Tammy Leedy pg 9, 14, 16, 18 and 20, Lois Lawrence pg 32-33 and 35, Scott Smith pg 26 and 28, Marlene Elliot pg 41, 42, and 48.

This exhibit, in fact went out with the jury during deliberations, and due to the prejudicial impact of this exhibit counsel should have objected to it. Not only did this exhibit show that the petitioner was in the detention home as a juvenile, but it was used by the prosecution to support the false testimony of David Riley.

In Aug 17, 1987 David Riley worked at the detention home that the petitioner was taken to. Commonwealth Ex 205 was a inventory sheet from Aug 17, 1987 when he was placed in this detention home.

David Riley claimed that when the petitioner was put in the detention home on Aug 17, 1987 he placed the F.R on the jam shorts that were found in park (see memorandum issue 7 (F) pg 33-34) This cleaned up the way things looked that somebody put F.R and Frank on the tag of these shorts then placed them ontop of a empty case of beer in the park because they wanted them found and linked to the petitioner. (memorandum issue 7 d.e pg 30-33)

Det Sassano testified (vol.5 pg 129) " i believe this is the first time i seen it, we were concerned with his admission Aug 17, 1987 to the detention home in which he was wearing a pair of jams"

The cover sheet of this exhibit is what the petitioner accerts went out with the jury and out side of showing that the petitioner was in the detention home, it shows that he had on a pair of shorts. No detail just shorts. Thus supporting Mr. Rileys testimony and that of Det. Sassano

However the petitioner later discovered that there was a nother page to this exhibit that was not attached, and this page gave more detail about the shorts the petitioner had on when he went into the detention home and they were not a pair of jams but a pair of cut off shorts, (cut off sweat pants) So Mr. Riley could not have placed the F.R on these shorts

Yet this exhibit prejudiced the petitioner with its misleading information that support Mr. Rileys false testimony further more, one of the prosecutions witnesses stated she got these shorts for the petitioner for his Birthday in 1987, his birthday is in Nov so he would not of even had these shorts in Aug of 1987

This issue was not without specificity, and was very specific in his writ of Habeas Corpus and memorandum.

-7-

10) The petitioner asserted in his Writ of Habeas Corpus (pg 14) and Memorandum (pg 38-39) that trial counsel was ineffective for failing to inform the petitioner that during his trial one of his jurors was having serious problems with her boyfriend, so serious that the judge was willing to replace her.

The respondents response to this was as follows "This is a non-issue, there is no evidence that would support a claim that said juror did not give a fair and impartial consideration to the case or that her problems whatever they may be affected her ability to sit as a juror in the petitioners case in a fair and impartial manner.

The Federal rules of criminal Procedure 24(c)(1) provides for the substitution of an alternate juror to replace a juror who becomes or is found to be unable or disqualified to perform juror duties. Determination of juror competency is left to the judges discretion.

Judge Van Horn during the petitioners trial was willing to replace this juror so he must have felt her problems with her boyfriend were of a nature that that could have effected her ability to fairly deliberate this case.

However counsel took it upon himself to decide this matter and didn't tell the petitioner about it untill after his trial, counsel failed completely to consult with the petitioner about this matter.

Issues 1-10 of the respondends respose and and addressed with in this response were all issues of counsels ineffectiveness and the petitioner respectfully prays that when this Hon. Court considers each of these issues it does so as a whole, and also takes into consideration Mr. Millers state of mind, something that the P.C.R.A Court failed to do.

Issues 11-14 are the claims that trial counsel raised on his direct appeal and rather than address all those claims in this response the petitioner would direct this Hon. Court to the memorandum filed by the petitioner.

15) The respondent States "The petitioner appears to claim that DNA found in this matter on the victims pants pocket was not detected as being human DNA, and a purple top tube of his blood was human. This is a non-issue. There is no indication in the record that the same was not human or human blood. The Claim is absurd.

The petitioner has no idea what the respondent is talking about when the respondent said "and a purple top tube of his blood was human" when in fact life codes lab reports that were a part of petitioners memorandum exhibits #4 and #5 show that the purple top tube of the petitioners blood was not detected as being human DNA, and that the DNA found on Mr. Lascoli's pants pocket said to be the petitioners was not detected as being human DNA

That is what is absured, how can the petitioners DNA not be detected as being human DNA, are they saying that the petitioner is not human. What is absurd is the fact that it didn't come out at the petitioners trial that the DNA found on the

-8-

pants pocket said to be the petitioners was not detected as being human DNA, what is absurd is the fact that Det. Sassano had this evidence at his house over night.

Before the DNA was done ABO blood typing was done and the petitioner blood type was not found on this pocket then, and Det. Sassano didn't handle the evidence then either.

When it was decided to have the DNA tests done fifty three (53) days after Mr. Lascoli was killed Det. Sassano took every thing to be tested to his house and kept it over night then the next day took these items to be tested, at this time the pants in question were not taken to be tested.

Everything tested at this time except the purple top tube of the petitioners blood had bacteria on it. Approx eighty days later and 132 days after Mr Lascoli was killed it was decided DNA tests were going to be done on the pants pocket in question.

Det. Sassano takes them to his house keeps them over night and when he takes them to life codes tells them to test the pocket because he believed the petitioners DNA would be found.

It was in fact found, but after 132 days what wasn't found was any bacteria. So now you have a purple top tube of the petitioners blood there was no bacteria in it and it was not detected as being human DNA, and you have the DNA found on the pants pocket said to be the petitioners, it also had no bacteria on it and was not detected as being human. Not to mention that after the petitioners trial it was also discovered that a purple top tube of the petitioners blood was missing. And contrary to what the respondent may say all these facts are in reports, set forth in petitioners memorandum.

16) David Houtz did in fact sign two affidavits, the petitioner gave the first original to his first P.C.R.A counsel and it disappeared so another was signed and it was in fact made a part of the petitioners memorandum as Ex #10, and the affidavit is not standing alone but supported by facts on the record and set forth in petitioners memorandum.

17) Because of the many facts set forth in petitioners memorandum, counsel should have compared the photo's Lisa Bennett took of the pants before she did the DNA tests to, to the photos of this pocket from the crime scene. The petitioner believes with the facts presented in his memorandum there can be no reason why counsel did not even look at these photos.

Wherefore, the petitioner, accents once again that the respondents response to this Hon. courts order was non-responsive in that it failed to respond in a comprehensive manner, and to address all of the petitioners issues, namely the prosecutorial misconduct issues, and all other responses were to petitioners unamended P.C.R.A

The petitioner respectfully requests that this Hon. Court grant him the relief set forth in his memorandum.

Respectfully Submitted

James F. Rodgers

James Franklin Rodgers Bm-3819

SCI Somerset

1600 Walters Mill Road
Somerset PA 15510

In The United States District Court
For The Western District Of P.A.

Civ. Action No. 06-046J

Mag Judge Lisa P. Lenihan
Dist Judge Kim R. Gibson

James Franklin Rodgers
 vs.
Gerald Rozum
 and
District Attorney of Blair County
Richard A. Consiglio

Proof Of Service

I hereby certify that i am on this 8th day of Dec 2006, placing in the Institutional Mail Box Petitioners Response To The Respondents Response of The Petitioners Writ of Habeas Corpus sent to the following:

Magistrate Judge Lisa Pupo Lenihan
United States District Court
For the Western District of PA
7th Ave and Grant Street
Pittsburgh PA 15219

and

Richard A. Consiglio
DA of Blair County
423 Allegheny St.
Hollidaysburgh PA 16648

RECEIVED
DEC 15 2006
UNITED STATES MAGISTRATE JUDGE

James F. Rodgers Bm-3819
SCI Somerset
1600 Walters Mill Road
Somerset PA 15510

Dated Dec. 8th 2006

James F. Rodgers